UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ALAMO INTERMEDIATE II HOLD-
INGS, LLC,

  *Plaintiff*,

v.                                              Case No.  SA-23-CV-01531-JKP

BIRMINGHAM ALAMO MOVIES,
LLC, ORCHESTRA PARTNERS DE-
VELOPMENT, LLC, MR. HUNTER
RENFROE,

  *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hunter Renfroe's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *ECF Nos. 24,28*. Plaintiff Alamo Intermediate Holdings (Alamo) responded. *ECF No. 27*. Upon consideration, the Court concludes the Motion is DENIED.

### Undisputed Factual Background

In January 2022, Alamo, as the named franchisor, and Birmingham Alamo Movies (BAM), as the named franchisee, entered into a Franchise Agreement under which Defendants sought to develop an Alamo Drafthouse venue in Birmingham, Alabama. Under the Franchise Agreement, Defendant Orchestra Partners Development, LLC ("Orchestra") agreed to act as the project developer and signed a separate Corporate Guaranty Agreement. Defendant Hunter Renfroe, co-owner of BAM and Orchestra, and the Operating and Controlling Principal under the Franchise Agreement, signed all documents on behalf of, and as representative of BAM and

signed the Corporate Guaranty Agreement as representative of Orchestra. Pertinent to this Motion, the Franchise Agreement contains a clause which states,

> *The parties mutually agree that the U.S. District Court for the Western District of Texas, or if such court lacks jurisdiction, the state courts located in Travis County, Texas, shall be the venue and exclusive forum in which to adjudicate any suit*, proceeding, claim, demand, investigation, or inquiry, formal or informal (collectively, an "Action") arising from or relating to this Agreement and any related guarantees or undertakings, and the relationship established thereby, however, with respect to any Action which seeks injunctive relief or other extraordinary relief, Franchisor may bring such Action in any court of competent jurisdiction. *The parties irrevocably submit to the jurisdiction of such courts and waive any objections to either the jurisdiction of or venue in such courts. The parties mutually agree that personal jurisdiction may be effected by service of process and that when so made shall be as if served personally.*

*ECF No. 18-1, Franchise Agreement, par. 18.9* (emphasis added).

When development of the franchise Alamo Drafthouse venue failed, Alamo filed this suit asserting a cause of action for breach of contract against BAM for violation of the Franchise Agreement, a cause of action for breach of contract against Orchestra for breach of the Corporate Guaranty Agreement, and a cause of action for breach of contract against Renfroe in his individual capacity for violation of the Franchise Agreement.

Renfroe now files this Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) in which he asserts this Court does not hold personal jurisdiction over him, individually.

## Issues to be Determined

Federal Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *Alvarado v. Envolve Client Services Group, LLC*, 653 F.Supp.3d 351, 354 (W.D. Tex. 2023). Typically, when presented with such a motion, a court must determine whether the forum state's long-arm statue confers personal jurisdiction and then determine whether the exercise of jurisdiction would be consistent with due process. *See, e.g.*, *Alvarado*, 653 F.Supp.3d at 354; *Pa-*

*tel v. Pacific Life Ins. Co.*, No. 3:08-CV-0249-B, 2009 WL 1456526, *21 (N.D. Tex. May 22, 2009). Here, however, the parties dispute whether Renfroe as an individual is bound by the terms and conditions of the Franchise Agreement which contains a forum selection clause and waiver of jurisdictional challenge. Specifically, Renfroe contends this Court lacks personal jurisdiction over him because he is a resident of Alabama, has no contact within the State of Texas to confer personal jurisdiction, and he is not a party to the Franchise Agreement which contains a forum selection clause and waiver of jurisdiction. In making this argument, Renfroe begins with the premise he is not a party to, and therefore, not bound by the terms of the Francise Agreement. Then, based upon this premise, contends this Court does not have personal jurisdiction over him, as an individual.

This Motion and Renfroe's arguments, as presented, present two separate issues for this Court's determination. First, whether Renfroe, as a non-signatory individual, is bound by the terms of the Franchise Agreement. Second, whether this Court holds personal jurisdiction over Renfroe. Because the Franchise Agreement contains a forum selection clause and waiver of jurisdictional challenge, this Court must determine, first, whether Renfroe is bound by its terms. Determination of this issue will direct whether this Court reaches Renfroe's challenge to personal jurisdiction.

## Discussion

**Issue One: Contract Construction: Whether Renfroe is Bound by the Terms of the Franchise Agreement**

Renfroe contends he is not a party, nor an individual signatory, to the Franchise Agreement, and therefore, cannot be bound by any forum selection clause contained therein. Renfroe argues that, by its clear language, this clause only applies to the "parties," and, as an individual, he is not a party to the Franchise Agreement. In addition, Renfroe contends he cannot be sued

3

individually because he signed the Franchise Agreement only in his representative capacity for BAM and signed the corporate Guaranty only in his representative capacity for Orchestra.[1] As representative, only, Renfroe contends he agreed to the forum selection clause for BAM and Orchestra, only.

**Legal Standard**

**1. Governing Law**

A federal court sitting in diversity applies Texas law in the interpretation of contracts negotiated, drafted, and executed in Texas. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–79 (1938); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). This case, therefore, requires application of Texas contract law in the Court's interpretation of the Franchise Agreement.

**2. Rules of Construction**

"Parties to a contract are the signatories to the contract or those who have otherwise indicated their consent to be bound by the contractual promises." *Harris v. Meridian Sec. Ins. Co.*, No. 4:19-CV-00507-P, 2019 WL 5457027, at *3 (N.D. Tex. Oct. 24, 2019)(citing *Willis v. Donnelly*, 199 S.W.3d 262, 271–72 (Tex. 2006)(holding this general principle but finding the non-signatory was not a party to the contract because consent was not otherwise indicated); *Germania Farm Mut. Ins. Co. v. Deere & Co.*, No. 2:19-CV-227-Z-BR, 2020 WL 10897965, at *2 (N.D. Tex. Aug. 31, 2020).

To interpret the meaning of a contract, Texas courts look first to the written instrument as a whole, its "four corners," to ascertain the intent of the parties. In its use of the "four corners

---

[1] In making his arguments, Renfroe conflates the concept of viability of a breach of contract cause of action against him individually with the issue whether he individually is bound by the Franchise Agreement terms. To determine this initial issue, the Court will look to the contract terms, only, without determination whether any breach of contract cause of action is viable.

rule," the court does not look for the subjective intent of the parties, but instead, looks for the objective intent expressed or apparent in the writing. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Thus, the court must enforce unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *Id*.

In addition, under the "four corners rule," the intention of the parties is to be gathered from the instrument as a whole. *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex. 1987); *Ervay, Inc. v. Wood,* 373 S.W.2d 380, 384 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994); *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex. 1965). Each part should be given full effect. *Lenape Resources Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex. 1996); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex. 1987). The court must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Aland v. Faison Assocs.,* No. 3:97–CV–2482–P, 1999 WL 500228, at *5 (N.D.Tex. July 14, 1999) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)); *see also R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex. 1980) (citing *Southland Royalty Co. v. Pan Am. Petroleum Corp.,* 378 S.W.2d 50, 53 (Tex. 1964); *Steeger v. Beard Drilling,* 371 S.W.2d 684, 688 (Tex. 1963)).

### 3. Extrinsic Evidence

When a contract remains ambiguous despite application of the foregoing principles, courts may then consider extrinsic evidence to ascertain the parties' intent. *Lenape Resources Corp.,* 925 S.W.2d at 574; *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex. 1963).

Nevertheless, if a contract is unambiguous, extrinsic evidence "will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *see also Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 386 (5th Cir. 2001); *P. Bordages-Account B, L.P. v. Air Products, L.P.*, 369 F.Supp.2d 860, 866–68 (E.D. Tex. 2004), aff'd, 127 Fed. Appx. 724 (5th Cir. 2005)(supporting cases cited therein).

## Discussion

The basis of Renfroe's argument is he is not a "party" to the Franchise Agreement, for two reasons: he did not sign it as an individual, and he is not a named party therein.

The Court recognizes the opening clause and signature page state the Franchise Agreement is between Alamo and BAM; however, the Franchise Agreement does not define the term "party" and the Franchise Agreement, itself, indicates these are not the only entities or persons obligated to its terms. Under Texas law, although he is clearly not a signatory to the Franchise Agreement in his individual capacity, Renfroe shall be interpreted to be a "party" to the Franchise Agreement if he otherwise indicated his consent to be bound by its terms. *See Willis*, 199 S.W.3d at 271–72; *Harris*, 2019 WL 5457027, at *3; *Germania Farm Mut. Ins. Co.*, 2020 WL 10897965, at *2. Thus, Renfroe's initial, basic argument that he cannot be held to the terms of the Franchise Agreement because he did not sign it and because he is not a named party must fail. Going further, determination whether Renfroe indicated his consent to be bound by the Franchise Agreement in his individual capacity requires review and construction of the Franchise Agreement terms.

To begin, the Franchise Agreement names Renfroe as both an Operating Principal and Controlling Principal of the Franchisee, BAM. *ECF No. 18-1, Franchise Agreement, Att. B, pars.*

*6,7*. The Franchise Agreement defines the duties and obligations of the Operating Principal, stating, "Operating Principal . . . shall be *individually*, jointly and severally, bound by all obligations of Franchisee, the Operating Principal and the Controlling Principal hereunder and under the Corporate Guaranty. *ECF No. 18-1, Franchise Agreement, at par. 6.3 (b)(iii)*(emphasis added). This section alone indicates Renfroe's intention to be bound to the terms of the Franchise Agreement individually as the Operating Principal and a Controlling Principal, and most importantly, on its face indicates his intent and agreement to be held individually bound by all obligations of BAM.

Other excerpts of the Franchise Agreement also demonstrate Renfroe's intent to by bound by its terms:

> • Franchisee and the Controlling Principals (as defined in Section 18.17) have represented to Franchisor that they have entered this Agreement with the intention to comply fully with the obligations to construct a Venue hereunder and not for the purpose of reselling the rights to develop the Venue hereunder. (Franchise Agreement, § 1.1);

> • Franchisee and the Controlling Principals understand and acknowledge that Franchisor has granted such rights in reliance on the business skill, financial capacity, personal character of, and expectations of performance hereunder by Franchisee and the Controlling Principals and that this Agreement and the rights and obligations hereunder may not be transferred until after the Venue is open for business to the public and in accordance with Section 2.6. (Franchise Agreement, § 1.1);

> • This Agreement, the documents referred to herein, and the Attachments hereto, constitute the entire, full and complete agreement between Franchisor and Franchisee and the Controlling Principals concerning the subject matter hereof and shall supersede all prior related agreements between Franchisor and Franchisee and the Controlling Principals. (Franchise Agreement, § 18.2);

> • No delay, waiver, omission or forbearance on the part of either party to exercise any right, option, duty or power arising out of any breach or default by the other party or the Controlling Principals under this Agreement shall constitute a waiver to subsequently enforce any such right, option, duty or power, or as to a subsequent breach or default by breaching party. Acceptance by Franchisor of any payments due to it hereunder subsequent to the time at which such payments are

due shall not be deemed to be a waiver by Franchisor of any preceding breach by Franchisee or the Controlling Principals of any terms, provisions, covenants or conditions of this Agreement. (Franchise Agreement, § 18.4);

• Any obligation of Franchisee or the Controlling Principals that contemplates performance of such obligation after termination or expiration of this Agreement or the transfer of any interest of Franchisee or the Controlling Principals therein, shall be deemed to survive such termination, expiration or transfer. (Franchise Agreement, § 18.13);

• All references herein to the masculine, neuter or singular shall be construed to include the masculine, feminine, neuter or plural, where applicable. Without limiting the obligations individually undertaken by the Controlling Principals under this Agreement, all acknowledgments, promises, covenants, agreements and obligations made or undertaken by Franchisee in this Agreement shall be deemed, jointly and severally, undertaken by all of the Controlling Principals. (Franchise Agreement, § 18.15); and

• The expiration, earlier termination or exercise of Franchisor's rights pursuant to Article XVI shall not discharge or release Franchisee or any of the Controlling Principals from any liability or obligation then accrued, or any liability or obligation continuing beyond, or arising out of, the expiration, the earlier termination or the exercise of such rights under this Agreement. (Franchise Agreement, § 18.16.)

Upon review of the Franchise Agreement as a whole, and in light of these specific excerpts, the Court concludes Renfroe demonstrated an intent to be bound individually, as the Controlling Principal and an Operating Principal of BAM. Most importantly, although not a named party to the Franchise Agreement, Renfroe clearly demonstrated a known intent to be "*individually*, jointly and severally, bound by all obligations" of BAM, the Operating Principal, and the Controlling Principal under the Franchise Agreement and under the Corporate Guaranty. This demonstrated intent includes the forum selection clause and the waiver of challenge to jurisdiction also contained within the Franchise Agreement.

In its review, the Court concludes the Franchise Agreement as a whole, as well as the cited excerpts, independently, are not ambiguous. For this reason, the Court will not look to Renfroe's attached affidavit and previous version of the Franchise Agreement to determine the par-

ties to this litigation's intent in crafting the language of the Franchise Agreement. *See Taita Chem. Co.,* 246 F.3d at 386.

Finally, under a separate principle of law, even if the Court were to accept Renfroe's argument that he is not bound by the Franchise Agreement because he is not a party, Renfroe would still be bound by the forum selection clause based upon his close relation to the parties, his admitted negotiation and familiarity with the substance of the Franchise Agreement, and his obligations under the Franchise Agreement which made it foreseeable that he would be bound by the forum selection clause.

Under the "closely related" doctrine, a non-signatory can be bound to a forum selection clause if the non-signatory is so closely related to the dispute such that it becomes foreseeable that it will be bound. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441-442 (5th Cir. 2022); *Excel Mktg. Solus., Inc. v. Direct Financial Solutions*, Civil Action No. 3:11-cv-0109-D, 2011 WL 1833022, at *6 (N.D. Tex. May 13, 2011); *Stellar Restoration Servs.*, 533 F.Supp.3d at 424. Under this doctrine, when the non-signatory is either "closely related to a signatory" or "allegedly engaged in conduct 'closely related to the contractual relationship,'" that non-signatory entity or person will be held bound by the internal forum selection clause. *Franlink Inc.*, 50 F.4th at 441-442; *Excel Mktg. Solus., Inc.*, 2011 WL 1833022, at *6; *Stellar Restoration Servs.*, 533 F.Supp.3d at 424. "[I]f the non-signatory is so inextricably intertwined with the signatories that he should be the subject of the forum-selection clause, it can be enforced against the non-signatory." *Huawei Tech. Co., Ltd. v. Yiren Huang*, No. 4:17-cv-00893, 2018 WL 1964180, at *9-10 (E.D. Tex. Apr. 25, 2018).

The key to making this determination is whether it is foreseeable the non-signatory will be bound by the forum selection clause. *Franlink Inc.*, 50 F.4th at 441-442; *Weatherford Int'l,*

*LLC v. Binstock*, 452 F.Supp.3d 561, 571-72 (S.D. Tex. 2020); *Stellar Restoration Servs*, 533 F. Supp.3d at 424; *Huawei*, 2018 WL 1964180, at *9-10. To determine whether a non-signatory is closely related enough to the obligations of a contract to make it foreseeable this non-signatory will be bound by the forum selection clause, courts should consider: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally[,] and (4) awareness of the forum selection clause particularly." *Franlink*, 50 F. 4th at 442. However, this test is not rigid, the analysis is context specific based on "weighing the significance of the facts relevant to the particular case at hand." *Id*.

Under these facts, Renfroe is closely related to the dispute such that it is foreseeable he would be bound by the forum selection clause contained within the Franchise Agreement. To begin, Renfroe is a co-owner of the franchisee BAM and the corporate guarantor Orchestra; he is a named Controlling and Operating Principal of each of these entities, and; as an owner, would benefit from their right to develop and operate the Alamo Drafthouse venue in Birmingham. Pursuant to the terms of the Franchise Agreement, Renfroe, as the named Controlling Principal, agreed to take on significant obligations related to the development of the franchise venue, in his individual capacity. As the signatory representative party of both BAM and Orchestra, Renfroe was aware of the negotiation and specific terms of both the Franchise Agreement and the Corporate Guaranty

Based upon these undisputed facts, Renfroe was well informed of the specific terms of the Franchise Agreement, BAM's obligations pursuant to its terms, and his own obligations under its terms. Based upon this contractually-required involvement and his personal integration into the substance of the Franchise Agreement, Renfroe knew that any dispute arising from the

Franchise Agreement or the franchise relationship would be litigated pursuant to the forum selection clause and the waiver of jurisdictional challenge stated therein. Consequently, Renfroe is so inextricably intertwined with the signatories and so intricately involved in the purpose and execution of the Franchise Agreement that he should be held subject to the forum-selection clause. *See Franlink*, 50 F.4th at 442; *Huawei*, 2018 WL 1964180, at *9-10. Therefore, under this doctrine as well, Renfroe's Motion should be denied.

Because Renfroe is individually bound by all obligations of BAM and the Operating and Controlling Principals and is bound by the forum selection clause and waiver to jurisdictional challenge, the Court need not reach Renfroe's substantive arguments pertaining to whether this Court holds personal jurisdiction over him. Consequently, this Court will deny Renfroe's Motion to Dismiss for Lack of Jurisdiction.

## Conclusion

For the reasons stated, Renfroe's Motion to Dismiss for Lack of Jurisdiction is DENIED.

It is so ORDERED.
SIGNED this 25th day of April, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE